22 C. C. P. A. (Patents) ·

WILLIAMS OIL–O–MATIC HEATING COR-PORATION v. UTILITEN CORPORA-TION.

Patent Appeal No. 3429.

Court of Customs and Patent Appeals.
June 12, 1935.

Langdon Moore, of Washington, D. C. (James Atkins, of Washington, D. C., of counsel), for appellant.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing the notice of opposition of appellant and holding that appellee was entitled to the registration of the trade-mark "Wash-O-Matic," for use on "Combined Laundry and Dish Washing Machines and Wash Boilers and Apparatus for Converting the Same into Combined Laundry and Dish Washing Machines."

In its application, appellee stated that it had used its trade-mark on its goods since February 26, 1931.

In its notice of opposition, appellant alleged ownership and registration of the trade-marks "Oil-O-Matic" and "Dist-O-Matic," for use on electrically operated and thermostatically controlled liquid-fuel-burning devices—registrations No. 199,-644, issued June 16, 1925, on an application filed July 5, 1924; No. 222,211, issued December 28, 1926, on an application filed July 24, 1926; No. 239,830, issued March 13, 1928, on an application filed November 2, 1927; No. 246,114, issued September 4, 1928, on an application filed April 27, 1928; No. 269,277, issued April 1, 1930, on an application filed September 13, 1928; ownership and registration of the term "Gas-O-Matic," for use on automatically electrically controlled and operated fuel heating systems, including the electrically operated controls therefor, registration No. 290,863, issued January 19, 1932, on an application filed March 5, 1929; ownership of the term "Ice-O-Matic," for use on domestic refrigerating units; that each of those trade-marks was used by appellant on its goods long prior to the use by appellee of its trade-mark "Wash-O-Matic" on its goods; that appellant has expended large sums of money in advertising its goods under its various trade-marks; that it has established a valuable

good will and acquired a high reputation as a manufacturer of high-grade articles; and that the registration of appellee's trade-mark "Wash-O-Matic" would be likely to cause confusion in the minds of the purchasing public, and, accordingly, damage appellant.

In its answer, appellee alleged that the goods of the respective parties did not possess the same descriptive properties; that the marks were not confusingly similar; and that, therefore, it was entitled to register its mark.

No testimony was submitted by either party.

In his decision, the Examiner of Interferences, among other things, said:

"Opposer contends that the products of both parties are 'household utilities' and seems to assume that applicant's goods are electrically operated although there appears to be nothing in the application involved herein or in the record of this proceeding to show how applicant's goods are operated, whether manually, electrically, mechanically or otherwise. It is deemed to be true that the products of both parties are 'household utilities' but this may be said also of any number of articles found in the home and is believed not a proper test as to whether the goods in question possess the 'same descriptive properties' within the meaning of section 5. Applicant's products, like those of the opposer, relate to a highly specialized art. Laundry and dish washing machines and wash boilers, it seems to the examiner, are widely different from the goods of the opposer consisting of refrigerating machines, liquid-fuel-burning devices and automatic electrically controlled and operated fuel heating systems, including the electrically operated controls therefor. The articles are adapted for different uses, are usually made by different manufacturers and are seldom, if ever, handled by the same retailers."

In affirming the decision of the Examiner of Interferences, the commissioner stated that the differences in the goods and the differences in the marks of the respective parties were sufficient "to support the holding that confusion is quite improbable," and that, therefore, appellee was entitled to register its mark. The commissioner cited, as authority for his holding, the decision of this court in the case of Williams Oil-O-Matic Heating Corp. v. Westinghouse Electric & Mfg.

Co., 62 F.(2d) 378, 379, 20 C. C. P. A. (Patents) 775.

It is contended by counsel for appellant that the goods of the respective parties are household utilities; that they are goods of the same descriptive properties; and that appellee's mark "Wash-O-Matic" is confusingly similar to appellant's marks.

In the case of Williams Oil-O-Matic Heating Corp. v. Westinghouse Electric & Mfg. Co., supra, this court, in holding that adjustable and electrically controlled sadirons—flatirons, were not goods of the same descriptive properties as either electrically operated and thermostatically controlled refrigerators or fuel burning devices, among other things, said:

"The goods of the parties are household utilities. They are adapted to be connected to the electric-light circuit, and are thermostatically controlled. They are not similar, however, in any other respect. They differ greatly in cost, use, appearance, and structure, and, of course, are not competitive.

"Were it not for the fact that they are thermostatically controlled, we dare say that no one would contend that sadirons possess the same descriptive properties as either fuel-burning devices or refrigerators.

"In this connection, it may be observed that electric toasters, heating pads, waffle irons, table grills, or sandwich toasters, and possibly other articles of household utility, are electrically operated and thermostatically controlled. Is it possible that those articles and either fuel-burning devices or refrigerators possess the same descriptive properties merely because they are electrically operated and thermostatically controlled? Might it not with equal force be argued that all electrically operated devices belong to the same class for trade-mark purposes?

"We are of opinion that the mere attachment of automatic temperature regulators does not so change the character of sadirons as to give them, within the principles heretofore referred to, the same descriptive properties as either electrically operated and thermostatically controlled refrigerators or fuel-burning devices."

It may be observed, as stated by the Examiner of Interferences, that there is nothing of record to indicate that appellee's goods are electrically operated or thermostatically controlled, nor is there any

evidence of record to establish that the goods of the respective parties are sold in the same establishments.

We are of opinion that the goods of the respective parties do not possess the same descriptive properties, and that the issues in this case are controlled by our decision in the case of Williams Oil-O-Matic Heating Corp. v. Westinghouse Electric & Mfg. Co., supra.

For an interesting discussion on a subject akin to that here involved, see All-American Mohawk Corporation v. Earl H. Rollinson, 22 C. C. P. A. (Patents) —, 77 F.(2d) 926, decided June 3, 1935.

Although other matters are presented in the briefs of counsel for appellant, we deem it unnecessary to discuss them.

We are of opinion that the tribunals of the Patent Office reached the right conclusion. Accordingly, the decision of the Commissioner of Patents is affirmed.

Affirmed.